925 F.2d 490
 288 U.S.App.D.C. 259
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
TOWNS OF CONCORD, NORWOOD, AND WELLESLEY, MASSACHUSETTS, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 No. 90-1179.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 11, 1991.
 
 Before MIKVA, Chief Judge, and SENTELLE and HENDERSON, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record on petition for review of an order of the Federal Energy Regulatory Commission, and on the briefs filed by the parties and argument by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petition for review is denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 Three Massachusetts towns that purchase electricity from a New York power development project challenge various findings of the Federal Energy Regulatory Commission ("FERC" or "the Commission") relating to the transmission of that power over New England Power Company ("NEP") lines. The towns' primary contention is that FERC improperly construed the NEP agreement as providing for "nonfirm" instead of "firm" transmission service. The towns also claim that the Commission erred in: finding that NEP did not discriminate against them by failing to provide a transmission discount; dismissing the towns' emergency motion for a stay of NEP's suspension of service; and requiring one of the towns to file its claims concerning a separate contractual provision in another administrative docket. We deny the petition for review in its entirety.
 
 I.
 
 5
 Along with other municipal electric facilities in Massachusetts, petitioners Concord, Norwood, and Wellesley ("the Towns") sought to purchase inexpensive federal preference power from a hydroelectric plant operated by the New York Power Authority ("NYPA"). Representing all of the municipalities purchasing the NYPA power, the Massachusetts Municipal Wholesale Electric Company ("MMWEC") arranged for NEP to transmit the NYPA power.
 
 
 6
 Although NEP and MMWEC were unable to reach formal agreement prior to the scheduled commencement of the MMWEC-NYPA purchase contract, NEP filed an unexecuted "Agreement for Transmission of Firm Power" as a proposed rate schedule with FERC. The agreement contained a "curtailment provision," which subordinated NEP's obligation to transmit the NYPA power for MMWEC to the demands of NEP's own ("native load") customers, as well as any pre-existing transmission agreements. See New England Power Co., 49 FERC p 61,129 at 61,553-54 (1989) [hereinafter Opinion and Order ]. The Commission accepted the agreement for filing but ordered an evidentiary hearing into the justness and reasonableness of NEP's proposed rates under section 205 of the Federal Power Act, 16 U.S.C. Sec. 824d (1988). See New England Power Co., 32 FERC p 61,374 (1985) [hereinafter Hearing Order ].
 
 
 7
 Although it had earlier described NEP's transmission service as "exhibit[ing] a firmness approaching that of NEP's native load" and possessing a "clear priority" over NEP's existing nonfirm tariff, Hearing Order, 32 FERC at p. 61,846, the Commission concluded on subsequent review that "the service NEP provides is more akin to nonfirm service than firm service." See Opinion and Order, 49 FERC at 61,554. The Commission also found the curtailment provision just and reasonable under the Federal Power Act "in comparison with other nonfirm services provided by NEP," but found that NEP's rate, based on firm service pricing principles, was unreasonably high. Id. In addition, the Commission summarily affirmed the administrative law judge's ("ALJ's") ruling that NEP's failure to provide the Towns with a transmission discount was not discriminatory, and dismissed the Towns' emergency motion for a stay of NEP's 1988 curtailment of service. Id. at pp. 61,556-57. The Commission subsequently denied the Towns' request for rehearing in all respects. New England Power Co., 50 FERC p 61,151 (1990) [hereinafter Rehearing ].
 
 II.
 
 8
 The Towns challenge several aspects of the Commission's decision approving the unexecuted agreement. They claim that, in characterizing the transmission service as nonfirm, the Commission improperly reversed an earlier holding that the service was firm. In addition, the Towns claim that the Commission erred in finding the curtailment provision in the agreement to be just and reasonable. We reject both these challenges.
 
 
 9
 First, we note that the Commission's initial order accepting the agreement for filing and scheduling a public hearing was merely preliminary, leaving detailed analysis of the agreement to the ALJ and the Commission on review. Although the Commission observed that the NYPA transmission service would "exhibit a firmness approaching that of NEP's native load," Hearing Order, 32 FERC at p. 61,846, it did so in the course of discussing NEP's treatment of investment tax credits; moreover, other statements in the order recognized that the NYPA transmission would be "subordinant [sic] to NEP's native load," and acknowledged the "conflicting characterizations" that had been advanced as to the nature of the service. Id. at p. 61,845; see also New England Power Co., 43 FERC p 63,013 at p. 65,137 (discussing tentative nature of the Commission's earlier pronouncements, and rejecting the Towns' argument that the Commission had "already decided that NEP has a firm contract to wheel the NYPA power") [hereinafter ALJ Decision ].
 
 
 10
 Given the preliminary and ambiguous nature of its earlier observations, as well as the plausible explanation the Commission gave for its decision on review, see Opinion and Order, 49 FERC at p. 61,554 (comparing curtailment provision in the agreement to similar language in NEP's existing nonfirm transmission tariff), we conclude that the Commission's finding that the NEP service is actually "more akin to nonfirm service than firm service," id., was the product of reasoned decisionmaking. Neither the ambiguity of the words nor the misspelling pushes the Commission's decision beyond the pale. See Panhandle Eastern Pipe Line Co. v. FERC, 890 F.2d 435, 439 (D.C.Cir.1989) (discussing standard of review). Indeed, although the Towns challenge the Commission's decision on procedural grounds, they do not deny that the curtailment provision, if given effect, would render the transmission agreement nonfirm. See ALJ Decision, 43 FERC at p. 65,134 (noting that all parties "have conceded that, under the curtailment clause proposed by NEP, interruption of the NYPA power could occur").
 
 
 11
 Second, we cannot say that the Commission acted arbitrarily or capriciously in finding that the agreement, including the curtailment provision, is not "unjust, unreasonable or unduly discriminatory" under section 205 of the Federal Power Act. See Opinion and Order, 49 FERC at p. 61,554. Where the Towns presented no evidence to undermine the Commission's conclusion, see Rehearing, 50 FERC at p. 61,451, their claim reduces to one for involuntary expansion of NEP's service commitment. However, as the Commission noted on review and in denying rehearing, the Towns failed to make the requisite filings under sections 211 and 212 of the Federal Power Act, the only provisions under which the Commission may compel wheeling. See 16 U.S.C. Sec. 824j-k (1988); Opinion and Order, 49 FERC at p. 61,553; Rehearing, 50 FERC at p. 61,451. See also ALJ Opinion, 43 FERC at p. 65,132-38. Thus, we uphold the Commission's finding that NEP's agreement to provide interruptible, nonfirm transmission of the NYPA power is just and reasonable. Moreover, we note that the Commission has ordered NEP to lower its rate to reflect nonfirm instead of firm pricing principles, thereby ensuring that the Towns will pay only for the level of service they receive. See Opinion and Order, 49 FERC at pp. 61,554-55; Rehearing, 50 FERC at p. 61,450.
 
 
 12
 Next, the Towns challenge as discriminatory NEP's failure to offer them a "multiple transmission" discount. As both the ALJ and the Commission found, however, NEP and other New England utilities offer such discounts only where there is an expectation of reciprocal treatment in the future, and the Towns lack the transmission facilities necessary to reciprocate. See ALJ Opinion, 43 FERC at pp. 65,138-39; Opinion and Order, 49 FERC at p. 61,556; Rehearing, 50 FERC at p. 61,451 (concluding that "the Towns failed to establish that any of the customers receiving a transmission discount lacked the transmission facilities with which to reciprocate"). Indeed, this court recently upheld a Commission decision finding that another utility's failure to provide Norwood with a similar discount was not discriminatory. See Boston Edison Co., 33 FERC p 63,027 (1985) (ALJ), aff'd, 44 FERC p 61,199 (1988), reh'g denied, 45 FERC p 61,455 (1988), appeal dismissed sub nom. Town of Norwood v. FERC, 906 F.2d 772 (D.C.Cir.1990).
 
 
 13
 The Towns also claim that the Commission erred in dismissing their emergency motion for a stay of NEP's proposed two-year suspension of transmission service, contending that the suspension was inconsistent with the unexecuted agreement. The Commission correctly found, however, that its characterization of the transmission service as nonfirm and its acceptance of the curtailment provision as just and reasonable rendered the Towns' challenge to the proposed suspension moot. See Opinion and Order, 49 FERC at p. 61,557. NEP's anticipated suspension was clearly permissible: the agreement does not limit the duration of any curtailment, and the Towns have not suggested that the suspension violated any of the agreement's explicit conditions. Moreover, an upcoming hearing ordered by FERC into the reasonableness of the rates charged by Northeast Utilities (which, pursuant to an agreement with NEP, assumed the NYPA transmission responsibilities for MMWEC) should address many of the Towns' economic concerns attending the curtailment.
 
 
 14
 Finally, the Towns argue that a 1987 agreement between NEP and Norwood entitles Norwood to firm transmission of NYPA power regardless of anything contained in the unexecuted agreement, and that the Commission improperly refused to review the separate agreement in this proceeding. Given the Commission's broad authority to establish its own rules of procedure and structure its own methods of inquiry, see, e.g., Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519 (1978), as well as the Towns' failure to raise this issue until rehearing, we find no error in the Commission's decision to review the Norwood-NEP agreement in a separate proceeding that would "provide all interested parties with notice and opportunity for comment." Rehearing, 50 FERC at p. 61,452 (concluding that it would be inappropriate to "resolve any disputes regarding this agreement in the instant docket," where the agreement had been filed in a separate docket and Norwood had conceded that the agreement was "separate and apart from the terms and conditions established in this proceeding").
 
 For the foregoing reasons, the petition is
 
 15
 DENIED.